JOHN BRENNAN AND PETER BRENNAN, EXECUTORS, ETC.,
v. ELIZABETH V. ZEHNER.

*Fraud—Evidence—Validity of deed.*

1. The fact that the execution of a deed is in line with a purpose previously entertained by the grantor, and that its effect is simply to carry out an agreement previously made between the parties, goes far towards negativing alleged fraud on the part of the grantee in securing its execution.

2. It has been repeatedly held that the fact that the circuit judge, who saw the witnesses, reached a certain conclusion, is of importance in determining a question of fact in any case where he was afforded a better opportunity for judging of the credibility of the witnesses than that possessed by the appellate court.

3. The defendant is held to have met the requirements of the rule which casts upon her the burden of showing her good faith, and to have established the validity of the deed sought to be set aside.

Appeal from Wayne. (Brevoort, J.) Argued June 29 and 30, 1893. Decided October 2, 1893.

Bill to set aside a deed. Complainants appeal. Decree affirmed. The facts are stated in the opinion.

*Julian G. Dickinson,* for complainants.

*James H. Pound,* for defendant.

MONTGOMERY, J. The bill in this case was filed by Annie E. Mahon in her life-time, and the cause has since her death been revived by her executors. The purpose of the suit is to set aside a conveyance of a double brick house and lot on Columbia street, in Detroit, made on the 3d day of December, 1891, by decedent to the defendant. The property is alleged to have been of the value of $10,000,

and was conveyed subject to a mortgage of $5,600, covering this and other property, and there was also reserved a life-estate in the grantor.

The bill of complaint was filed on the 12th day of December, 1891, and alleges that during the preceding two weeks complainant had been seriously ill, helpless, and unfit to transact any business, and most of the time incapable of knowing what was going on around her. The bill further alleges that on the 3d day of December, 1891, and while she was lying almost unconscious in her bed, the defendant came into her room with two men, who were strangers to complainant, and while complainant's sister, who had been several days and nights attending complainant, was absent from the room, and that she, the defendant, came to the bed where complainant was lying, lifted her up, and took hold of her hand, and caused her, by taking and conducting her hand, to sign her name to a paper placed before her by one of the men, which said paper complainant could not see as to its contents, and did not know what were its contents; that at the same time one of the men present assisted around the bedside of complainant in what was done in respect to signing said paper. The complainant further alleges in her bill that she was unaware of the purpose or reason of what was being done; that she was practically unconscious, and unable to resist what was being done, but retained the recollection of her hand being guided in the signature of some paper, which was all a blank to her vision and understanding. The answer denies these allegations, and avers that the contents of the paper were fully described to and understood by Mrs. Mahon, and, further, that the conveyance was made in pursuance of a previous agreement, and in fulfillment of oft-repeated promises and an intention frequently expressed to others.

The testimony in the case is very voluminous, and in

many of its parts contradictory,—so much so, indeed, that the determination of the case must depend largely upon the credibility of witnesses. A careful and painstaking examination of the record, however, has convinced us that the preponderance of the testimony corroborates the theory of defendant. Certain facts appear in the case undisputed, or supported by such an overwhelming weight of the evidence as not to require extended citation of the testimony. These facts are that the relations between the defendant and Mrs. Mahon were and had been, since the early childhood of the former, exceedingly friendly. Mrs. Mahon was the godmother of the defendant. Notwithstanding the disparity in their ages, Mrs. Zehner was bridesmaid to Mrs. Mahon on the occasion of the latter's marriage. Mrs. Zehner had always been accustomed to call Mrs. Mahon aunt, and was in turn spoken of at times by Mrs. Mahon as her daughter, and in her letters she called herself aunt of Mrs. Zehner. Mrs. Mahon, who had no children of her own, was not on the most friendly or intimate terms with some of her sisters. She had frequently expressed an intention to leave something by will to Mrs. Zehner. In the summer of 1891, after having been with her sister at Niagara Falls for a time, she returned to Detroit, and took up her residence with Mrs. Zehner in a cottage occupied by her and her husband. Shortly after this, the parties removed to the house on Columbia street, which is the subject of the controversy.

The parties are not agreed as to the terms upon which Mrs. Zehner and her husband gave up their former home, and removed to this house. Mrs. Mahon testified that Mrs. Zehner was to keep the house, rent free, in consideration of the care which she (Mrs. Mahon) was to receive, and that the arrangement was to continue during Mrs. Mahon's pleasure. On the other hand, Mrs. Zehner testifies that Mrs. Mahon agreed that the Columbia-street house was to

be hers, and stated that she had already by will provided that it should be hers; and that she (Mrs. Zehner) undertook and agreed to care for Mrs. Mahon during the latter's life-time; that, because of the arrangement, she gave up a purpose which she had entertained of buying a house, and incurred considerable expense in fitting up the house in question. Under the arrangement, whatever it may have been, the parties removed to the Columbia-street house. We think the claim of Mrs. Zehner has the support of the preponderance of the evidence. Numerous witnesses testified to statements of Mrs. Mahon substantially acknowledging the agreement as Mrs. Zehner puts it. The statements were made too often to justify an inference that the witnesses have mistaken the tenor of the talk.

We have referred to this agreement, and the testimony bearing upon it, at some length, as we deem it of considerable importance in determining the main question of fraud charged in the bill; for, if the execution of the deed was in line with a purpose previously entertained, and its effect was simply to carry out an agreement previously made, the fact goes far towards negativing the alleged fraud.

Upon the direct question of whether the fraud charged in the bill was perpetrated, we find the testimony of Mrs. Mahon disputed, not only by the contradictory circumstances above cited, but we have the testimony of Ralph Phelps, Jr., Esq., who drew the deed, and who testifies that its contents were fully made known to Mrs. Mahon, and that she appeared to be perfectly capable of comprehending the nature and import of the transaction; that she stated to him that the subject had been fully talked over between Mrs. Zehner and herself; and that she signed the deed freely, and without assistance, and without her hand being controlled or guided. This testimony is corroborated by that of Richard Tregaskis, the other witness

to the deed, and by Mrs. Zehner, the defendant. It is a significant fact that Mrs. Mahon denies having made the statements relative to her intention to devise the property to Mrs. Zehner, and with reference to her promises that the property should become hers, with as much emphasis as she asserts that the contents of the deed were not known to her; yet the fact that she did make the statements to various parties is so clearly proven as to be scarcely open to controversy.

We feel constrained, in view of all the circumstances of the case, of her oft-repeated declarations of intention, of her acknowledgment of the agreement, and of the direct testimony of these witnesses, to hold that the defendant has shown good faith, and has established the validity of the deed. We recognize the fact that the relations between the parties were such that the burden of proving good faith is, within settled rules, shifted to the defendant; but in the present case we think that the requirements of that rule have been met. The circuit judge, who saw the witnesses, reached the same conclusion. We have repeatedly held that this fact is of importance in determining a question of fact in any case where a better opportunity for judging of the credibility of witnesses is afforded the circuit judge than we can have.

The decree below will be affirmed, with costs.

The other Justices concurred.